UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAULA WALKER,

    Plaintiff,

v.

CAROLYN W. COLVIN,

    Defendant.

Case No. 15-cv-00097-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 22, 26

Plaintiff Paula Walker seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS the case for further proceedings consistent with this order.

## I. BACKGROUND

On August 11, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Administrative Record ("AR") 21. On August 19, 2011, Plaintiff filed a Title XVI application for Supplemental Security Income. AR 21. In both applications, Plaintiff alleges a disability onset date of July 22, 2011. AR 21. Plaintiff's claims were initially denied on December 7, 2011, and upon reconsideration on July 2, 2012, and Plaintiff subsequently filed a written request for hearing on August 27, 2012. AR 21. A hearing was held before Administrative Law Judge ("ALJ") Mary P. Parnow on April 4, 2013. AR 21.

Plaintiff is 51 years of age and has a high school diploma. AR 153, 158. She lives with her husband, who is on disability, and has a daughter who helps with the chores and visits about twice

a week, or when Plaintiff needs her. AR 358, 361. Plaintiff reports she has a history of hypertension and has experienced vertigo with headaches since 1999. AR 224. Plaintiff's employment history includes working as a machine operator at Hostess cakes, as an assistant manager at Storage Mart[1], and as a cashier at Target. AR 348-51. Plaintiff testified that she discontinued her employment at Target on July 22, 2011 after sustaining a chest fracture. AR 348-49. Plaintiff claims that the primary reason that she cannot work is her uncontrolled high blood pressure despite consistently taking her prescribed medication. AR 352-53. Plaintiff testified that she has been compliant with her treatment and medications and reported losing 25 pounds at the time of the hearing. AR 353. Plaintiff's symptoms include constant dizziness, nausea, and headaches that can persist for days. AR 356-57. Plaintiff reported having a headache and experiencing dizziness and queasiness during the hearing. AR 360. On average, Plaintiff's symptoms cause her to be bedridden three times per week. AR 357. On days when she gets out of bed, Plaintiff watches television, washes dishes, and may go outside and play with the dogs. AR 358. Although Plaintiff reported right ankle pain, the ALJ was unable to find an ankle impairment because Plaintiff failed to submit further records, and she did not report this pain to the consultative internal medicine examiner. AR 24, 224-228.

On July 25, 2011, Plaintiff had her first of three visits with Irene Ho, P.A.C., where Plaintiff complained of sporadic muscle spasms under her left breast. AR 245. Plaintiff reported being off blood pressure medications for about two years until Physician Assistant Ho started Plaintiff on hydrochlorothiazide, accupril and Toprol, after observing mild tenderness to palpation over the left ribs and blood pressure of 198/102. AR 246-47. Plaintiff was diagnosed with musculoskeletal pain, tonsillar hypertrophy, and hypertension. AR 246-47. Plaintiff saw Physician Assistant Ho for two more visits after Plaintiff complained of experiencing headaches, dizziness, and chest discomfort. AR 241-245. Physician Assistant Ho noted Plaintiff's hypertension was uncontrolled despite restarting her medications. AR 243-244. Plaintiff continues to suffer from uncontrolled hypertension despite consistently taking her medication as prescribed since July

---

[1] The VE defined Plaintiff's Storage Mart position as a "storage facility rental clerk position." AR 365.

2011. AR 353, 361.

The ALJ considered four different medical opinions in making her determination. First, Douglas Zhang, M.D. treated Plaintiff at the Family Medical Group of San Leandro, where she received treatment for hypertension and other health issues from July 25, 2011 to December 9, 2011. AR 239-46. On September 9, 2011, Dr. Zhang opined that, due to her impairments, in an eight-hour work day Plaintiff would require the ability to lie down or recline in excess of a normal break, take a 15 minute unscheduled break every two hours, and would be absent from work three or more times per month. AR 222-23. Dr. Zhang also opined that, in an 8-hour workday, Plaintiff could stand/walk for one hour, sit for 8 hours and could lift and carry 20 pounds occasionally and 10 pounds or less frequently. AR 222-23. During a follow up appointment on December 9, 2011, Dr. Zhang noted that Plaintiff's blood pressure was "very hard to control" and added cloridine to the list of Plaintiff's treatment regimen. AR 239-40.

On November 17, 2011, Frank Chen, M.D. performed a consultative examination. AR 224-28. Plaintiff reported that she could cook, do house work, wash dishes, do laundry, buy groceries, watch television, read, use a computer, and take walks. AR 224. Plaintiff's blood pressure was 202/150, which Dr. Chen diagnosed as "poorly controlled hypertension" and advised Plaintiff to seek medical attention as soon as possible. AR 224-25. He further noted that he could not perform a spirometry test due to Plaintiff's elevated blood pressure. AR 225. Dr. Chen opined that Plaintiff could stand, walk, and sit for six hours in an eight-hour day, and she can lift and carry 50 pounds occasionally and 25 pounds frequently. AR 225.

On December 7, 2011, State agency medical consultant J. Bradus, M.D., reviewed Plaintiff's medical records and assessed her functional capacity. AR 53-64. Dr. Bradus opined that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an 8-hour workday; sit for about six hours in an 8-hour workday; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; occasionally balance, stoop, crouch and crawl and frequently kneel. AR 60-62.

On June 27, 2012, State agency medical consultant K. Beig, M.D., reviewed Plaintiff's medical records and assessed her functional capacity. AR 41-52. Dr. Beig determined that Plaintiff

3

can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an 8-hour workday; sit for about six hours in an 8-hour workday; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; occasionally balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme cold, extreme heat, and hazards. AR 48-50.

Mark Robinson, M.D., treated Plaintiff from March 20, 2012 to February 25, 2013. AR 283-84, 287, 289, 292, 300-306. Dr. Robinson observed that Plaintiff continued to experience uncontrolled blood pressure. AR 283-84, 287, 289, 292, 300-306. In addition, Dr. Robinson observed a tachycardic heart rate and increased Plaintiff's dosage of clonidine. AR 289, 298. Dr. Robinson discontinued hydrochlorothiazide and started the Plaintiff on Lasix and referred Plaintiff to a cardiologist. AR 289. Plaintiff underwent an echocardiogram on March 1, 2013. AR 327-328. On March 26, 2013, Dr. Robinson opined that Plaintiff would require a job that allowed her to shift positions between sitting and standing, would need hourly unscheduled breaks for five to ten minutes each, and would likely be absent once or twice per month due to her impairments. AR 265-66. Furthermore, Dr. Robinson opined that Plaintiff can stand/walk for one hour in an 8-hour workday, can sit for seven hours in an 8-hour workday, would need to take unscheduled breaks, can occasionally lift/carry 10 pounds, and would have limitations with her bilateral hands, fingers and arms due to her hypertension. AR 265-66.

In a decision dated July 9, 2013, the ALJ found that Plaintiff was not disabled from the onset date through the date of the decision. AR 28. A request for review of the hearing decision was filed late with the Appeals Council on October 24, 2013. AR 11-14. The Appeals Council denied Plaintiff's request for review on November 4, 2015. AR 5-7. On August 24, 2015, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

On August 24, 2015, Plaintiff filed a motion for summary judgment. (Pl.'s Mot., Dkt. No. 22.) Defendant filed an opposition and a cross motion for summary judgment on October 20, 2015. (Def.'s Opp'n, Dkt. No. 26.) Plaintiff filed a reply on October 29, 2015. (Pl.'s Reply, Dkt. No. 27.)

///

4

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a).

1  If the claimant meets the burden of establishing an inability to perform prior work, the
2  Commissioner must show, at step five, that the claimant can perform other substantial gainful
3  work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the
4  burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th
5  Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 22, 2011, the alleged onset date. AR 23.

At step two, the ALJ found that Plaintiff has the severe impairments of hypertension, history of chest fracture, history of vertigo, and obesity. AR 23.

At step three, the ALJ concluded that the medical evidence failed to support a finding that Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 24.

In regards to Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff has an RFC "to perform less than the full range of light work." AR 24. Specifically, the ALJ found that the Plaintiff

> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an 8-hour workday; frequently climb ramps/stairs; occasionally balance, stoop, crouch and crawl; frequently kneel; must avoid concentrated exposure to extreme cold, extreme heat, and hazards (machinery); and is precluded from working at heights.

AR 24.

At step four, the ALJ accepted the opinion of the vocational expert and concluded that, "based on the recentness, duration, and earnings level," Plaintiff's past positions as a storage facility rental clerk and cashier are properly classified as past relevant work experience. AR 28. Based on the VE's findings, the ALJ concluded that the Plaintiff is not precluded by her RFC from performing these two positions as actually and normally performed. *Id.* Therefore, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *Id.*

### IV. DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her

application for social security benefits and that the case should be remanded for payment of benefits or, alternatively, for further proceedings for four reasons: (1) that the RFC determination is unsupported by substantial evidence because the ALJ committed harmful error of law by affording little weight to the opinions of treating physicians Dr. Zhang and Dr. Robinson; (2) that the credibility determination is unsupported by substantial evidence; (3) that the ALJ errered in finding that Plaintiff's past work as a cashier qualifies as past relevant work; and (4) that the Step 4 determination is not supported by substantial evidence because the ALJ relied on VE's testimony elicited in response to an incomplete hypothetical question. (See Pl.'s Mot. at 1:1-11.)

### A.  Weight of the Medical Evidence

The ALJ afforded great weight to the opinions of the non-examining State Agency medical consultants Dr. Bradus and Dr. Beig, some weight to the opinion of consultative examiner Dr. Chen, and little weight to the opinions of treating physicians Dr. Zhang and Dr. Robinson. AR 27.

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987)). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Id.* (quoting *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence. *Id.*  "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given." *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007).

Here, the ALJ gave little weight to the opinions of the treating physicians because they were not supported by treatment records and contemporaneous progress notes. AR 27.  Plaintiff

7

argues that the ALJ does not provide "an explanation as to how the treatment notes from Dr. Zhang and Dr. Robinsons do not support their opinions, nor did she cite any contradictory evidence" aside from the opinions of consultants Drs. Bradus and Beig, which she determined were "most consistent with the record." AR 27; Pl.'s Mot. at 10.  Indeed, the limitations opined by both treating physicians are consistent with each other, and the ALJ does not explain how they are otherwise inconsistent with the record.  The only evidence cited was, "[a]s noted by Dr. Beig, the claimant has poorly controlled hypertension without evidence of any end organ damage; chest pain that is not definitively cardiac." AR 27.  To the contrary, the medical record supports the documented side effects Plaintiff experiences due to hypertension, despite not experiencing end organ damage. AR 239-47, 268-81, 282-314, 315-26, 327-37.  Thus, the ALJ failed to explain how the opinions of Plaintiff's treating physicians were not consistent with the record, or even less consistent than the opinions of the non-examining consultants.

Furthermore, the ALJ failed to consider the "specified factors" after allegedly determining that the treating physician's opinions are not supported. *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)). Here, Plaintiff was treated by Dr. Zhang from July 25, 2011 to December 9, 2011, and by Dr. Robinson from March 20, 2012 to February 25, 2013. *Orn*, 495 F.3d at 631; AR 239-46, 283-84, 287, 289, 293, 298, 300-03, 306.  Thus, as Plaintiff argues, "[e]ven if [the treating physicians] do not meet the test for controlling weight, their opinions would be entitled to a significant amount of weight based on their treating relationships and consistency of their opinions with the evidence in the record." (Pl.'s Mot. at 10.)  The Court agrees.

When an ALJ fails to properly reject a treating or an examining physician's medical opinion, that opinion must be accepted as true. *Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010). Accordingly, the ALJ's failure to identify specific legitimate reasons supported by substantial evidence for rejecting the treating physicians' opinions requires that they be accepted as true on remand.

**B.     Credibility**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear, and convincing reasons" for the rejection. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; general findings are insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause alleged symptoms, but that her statements regarding the "intensity, persistence, and limiting effects" lacked credibility. AR 25. Plaintiff argues that the ALJ's adverse credibility determination is unsupported by substantial evidence. (Pl.'s Mot. at 11:1-2.) To the contrary, the ALJ offered the following reasons to discredit Plaintiff's testimony: (1) Plaintiff undergoes conservative treatment; (2) Plaintiff reported to consultative examiner Dr.Chen that she performs daily activities; and (3) Plaintiff's daughter only visits twice a week to help with chores. AR 27.

Even if the ALJ identifies the specific testimony she finds not credible, in order to reject a claimant's subjective complaints, an ALJ must give "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Without affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *See id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Accordingly, the Court will individually address below each reason the ALJ used to discount Plaintiff's testimony.

///

### i. Conservative Treatment

In support of discrediting Plaintiff's testimony, the ALJ claims that Plaintiff's medical record does not support the level of restriction alleged because Plaintiff "received limited conservative treatment." AR 27. The Commissioner cites to the Social Security Ruling, which states an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." (Def.'s Opp'n 5:6-9) (quoting SSR 96-7p).

Here, the ALJ does not cite to evidence in the record to support her claim that Plaintiff's course of treatment is indeed "conservative." AR 27. Plaintiff was on six different medications to treat her hypertension since February 2013 and testified that she has consistently followed her prescribed treatment since July 2011. AR 284-85, 353, 361. The ALJ does not identify evidence of a prescribed or existing aggressive course of treatment, which Plaintiff refused or failed to seek. Thus, the ALJ's analysis fails absent this evidence.

The Commissioner claims that, although the Plaintiff complained that the ALJ failed to discuss treatment options that she could have taken, "it is common sense that serious hypertensive complications such as end organ damage would call for specific and aggressive treatment." (Def.'s Opp'n 4 n.1.) This argument is not clear and convincing, because although Plaintiff did not suffer from end organ damage, she was not symptom free. Indeed, Plaintiff's hypertension caused her to suffer from symptoms such as constant dizziness, nausea, and headaches. AR 206, 209-21, 224-28, 248-51. Lastly, Plaintiff's treating physicians consistently noted that Plaintiff's hypertension was difficult to control and continued her treatment by adjusting her medications. AR 239, 267. Thus, the ALJ's assertion that Plaintiff's course of treatment undermines her credibility is not clear and convincing because there is no evidence that Plaintiff's treatment course was inconsistent with her alleged pain.

### ii. Daily Activities

The ALJ cites to Plaintiff's testimony to Dr. Chen that "she cooks, does housework, washes dishes, does laundry, buys groceries, watches television, uses a computer, reads, and takes walks" as reasons to undermine the degree of limitation Plaintiff has alleged. AR 27.

Daily activities may form the basis for an adverse credibility finding where the plaintiff's

activities: (1) contradict her other testimony; or (2) meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (certain activities of daily living may be the basis for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from her capability as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Plaintiff's statements have consistently acknowledged that she is able to perform activities that are required for daily living, but that her ability to perform these tasks is restricted by her impairments. AR 25, 27, 172-74, 357-58. For example, Plaintiff testified that her impairments generally cause her to stay in bed three days a week, she is sometimes unable to get up to use the bathroom, and that her daughter helps her "a lot" with chores. AR 357-58. In her September 18, 2011 function report, Plaintiff indicated that she must lie down after showers due to nausea, that she must take 15 minute breaks while cooking, and that she cannot drive a car due to dizziness. AR 172-74. When taken as a whole, the evidence supports Plaintiff's statements that her ability to perform daily activities is limited by her disabilities, and her report to Dr. Chen is not inconsistent with the record. Thus, the ALJ's assertion that Plaintiff's activity report to Dr. Chen undermines her credibility is not clear and convincing.

### iii. Assistance from Daughter

The ALJ also discredits Plaintiff's testimony on the grounds that Plaintiff and her husband "would need more assistance if her limitations were as severe as alleged." AR 27. Specifically, the ALJ notes that Plaintiff testified that her daughter only comes by twice a week to help with chores. AR 361. The evidence does not support the ALJ's determination. The ALJ fails to address that Plaintiff further testified her daughter helps her "a lot" and comes by whenever Plaintiff needs something. AR 358, 361. "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or

1  decision." SSR 96-7p. Here, the ALJ arbitrarily determined that help twice a week was insufficient
2  without providing evidence to support this conclusion. AR 27. The ALJ's reasoning only focuses
3  on one portion of Plaintiff's testimony involving her daughter, and, therefore, fails to be clear and
4  convincing.

5  In light of the foregoing, the ALJ improperly discredited Plaintiff's testimony, because she
6  failed to identify sufficient evidence to undermine the claimant's subjective complaints.

### C. Past Relevant Work

The ALJ found that Plaintiff's past relevant work included her positions as a cashier, rental clerk, and bakery worker. AR 28. The ALJ determined that Plaintiff's RFC does not preclude her from performing the cashier and rental clerk positions as actually and normally performed. AR 28. Social Security regulations define "past relevant work as work that a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it." 20 C.F.R. § 416.960(b)(1). In order for past jobs to qualify as past relevant work, they must have been substantial gainful activity. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

Plaintiff argues that the ALJ erred in determining that her work as a cashier qualified as past relevant work because her earnings were below the Substantial Gainful Activity ("SGA") earning level. (Pl.'s Mot. at 14.) Between March and August 2011, Plaintiff worked four hours per day, four days per week, and earned $8.25 per hour. AR 158. This equates to a gross monthly income of $528.00, which is well below the 2011 SGA monthly amount of $1,000. *See id.*; SOC. SEC. ADMIN., *Substantial Gainful Activity*, https://www.ssa.gov/OACT/COLA/sga.html (last visited Sept. 8, 2016); AR 158.

In opposition, the Commissioner cites *Keyes v. Sullivan*, where the court held that "the fact that [a claimant's] earnings were not substantial will not necessarily show that [the claimant is unable] to do substantial gainful activity." (Def.'s Opp'n at 8:25-28) (quoting *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990)). *Keyes*, however, is factually distinguishable. In *Keyes*, the plaintiff was a self-employed, founder of a Church, and argued that he was not engaged in substantial gainful work because he did not receive a salary and had no intention of profiting from his activities. *Id.* at 1056. The court held that the plaintiff's activity was gainful and that it is

12

immaterial that he did not intend to realize a profit "because he performs activities that are normally done for profit." *Id*. These activities included controlling the Church's bank and checking accounts and producing most of the revenue for the business. *Id.* That is not case here.  Indeed, the ALJ did not address Plaintiff's earning record, even though she found that it was past relevant work based on "the recentness, duration, and earnings level." AR 28, 129.

The Court finds that *Montoya v. Colvin*, 2016 WL 1622240, at *1 (9th Cir. Apr. 25, 2016), is more instructive.  In *Montoya*, the plaintiff argued that the ALJ erred in classifying her prior employment as past relevant work due to her low monthly average income. 2016 WL 1622240, at *1. "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Id.* (quoting *Lewis v. Apfel,* 236 F.3d 503, 515 (9th Cir. 2011)). If the average monthly earnings are below the designated Social Security Administration amounts, "the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant *has* engaged in substantial gainful activity." *Id.* (quoting *Lewis,* 236 F.3d at 515) (emphasis in original).  As a result, the ALJ erred by failing to address the plaintiff's earnings because "although the record is unclear whether Montoya met that average monthly income, the ALJ stated that she had past relevant work . . . without addressing the substantial gainful activity issue or developing a record on it." *Id.* at *2.

Here, as in *Montoya*, the ALJ failed to address Plaintiff's insufficient earnings when determining that the cashier position qualified as past relevant work. Accordingly, the Court finds that the cashier position is not substantial gainful activity, and, therefore, does not qualify as past relevant work.  The Court notes that Plaintiff does not challenge the ALJ's finding that the rental clerk position is past relevant work.

### D.     Vocational Expert Testimony

Plaintiff argues that the ALJ erred by relying on the VE's testimony that Plaintiff could perform her past relevant work as a cashier and storage facility rental clerk. (Pl.'s Mot. at 14; AR 28.)  As an initial matter, as discussed above, the cashier position does not qualify as past relevant work. *See* discussion *supra* Part IV.C.

In regards to the storage facility rental clerk position, Plaintiff argues that the VE's

13

testimony regarding her ability to perform the work was in response to an incomplete hypothetical question and cannot provide substantial evidence to support the ALJ's determination. (Pl.'s Mot. at 15.) Specifically, Plaintiff argues that, had the ALJ properly weighed the medical opinions of treating physicians, Plaintiff would have been found unable to perform the light, unskilled work, which would have resulted in a finding that she was disabled under the Social Security Act. (Pl.'s Mot. at 15; AR 27, 369-71.) Indeed, when the hypothetical included some of the limitations identified by Drs. Robinson and Zhang, the VE testified that there was likely no work available for Plaintiff due to her need for hourly breaks of five to 10 minutes. AR 369-71.

In light of the foregoing, the ALJ improperly relied on the VE's testimony, which requires that the case be remanded for further proceedings to determine at step four whether Plaintiff has the ability to perform her past relevant work as a rental clerk given the limitations identified by Drs. Zhang and Robinson, and, if necessary, to proceed to step five to determine whether she can perform other substantial gainful work that exists in the local or national economy.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion for summary judgment is DENIED, and this action is REMANDED to the Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). Specifically, a new administrative hearing to obtain additional vocational expert testimony, consistent with this order.

IT IS SO ORDERED.

Dated: September 28, 2016

KANDIS A. WESTMORE
United States Magistrate Judge